

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## FOR THE STATE OF GEORGIA

MAMILOVE, LLC, Michele Reymond, and )
Lorraine Reymond, )
                 )
          Plaintiffs, )
                 )   Civil Action File No.
vs. )
                 )   10A-10508-8
Legacy Academy, Inc., Commercial )
Contractors Enterprises, Inc., Franklin L. )
Turner, Melissa V. Turner, Corporate John )
Does X, Y, and Z, and Individual John )
Does A, B, and C, )
                 )
          Defendants. )
                 )

FILED IN OFFICE
2010 NOV 22  PM 2:30
TOM LAWLER, CLERK
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT THEREOF

Pursuant to Uniform Superior Court Rule 6.7, Plaintiff MAMILOVE, LLC ("Plaintiff Mamilove"), Plaintiff Michele Reymond and Plaintiff Lorraine Reymond (collectively, "Plaintiffs") hereby file this Emergency Motion for Temporary Restraining Order and Brief in Support Thereof.  Plaintiffs respectfully request the Court enjoin (1) Defendant Legacy Academy, Inc. ("Defendant Legacy") and any nominee from attempting to enforce any post-termination provisions of the Franchise Agreement between the parties, which was procured by fraud, and in particular those provisions of the Franchise Agreement having to do with an appraisal and forced sale of the franchise business; (2) Defendants from removing, altering or otherwise damaging certain fixtures between the adjacent realty of Plaintiff Mamilove and Defendant Legacy in violation of Plaintiffs' equitable title; and (3) Defendants from

constructing a new fence at the rear of Defendant Legacy's realty, thus extinguishing Plaintiffs' prescriptive easement, showing the Court as follows:

## I.    INTRODUCTION & BRIEF STATEMENT OF RELEVANT FACTS

### The Parties

Plaintiffs Michele and Lorraine Reymond (collectively, the "Reymond Plaintiffs") are managers of Plaintiff Mamilove, a franchisee of Defendant Legacy. Plaintiffs own and operate a childhood education center in the City of Sugar Hill (the "Sugar Hill location"). Defendants Franklin L. and Melissa V. Turner (collectively, the "Turner Defendants") are officers and principal shareholders of Defendant Legacy. The Turner Defendants are also officers and principal shareholders of Defendant Commercial Contractors Enterprises, Inc. ("Defendant CCE"). Defendant CCE selected, acquired and developed the site for the Sugar Hill location. The Sugar Hill location is adjacent to the corporate headquarters of Defendant Legacy and Defendant CCE.

### The Purchase Option

For reasons set forth more fully in the Complaint, Plaintiffs filed this lawsuit, among other things, to assert claims for relief arising from their franchise relationship with Defendant Legacy. As is set forth in the Verified Complaint, Defendants engaged in a pattern of fraudulent conduct in entering into franchise agreements with Plaintiffs and with many, if not all, of the franchisees in the Legacy system. As a consequence of that fraud, Plaintiffs were induced to enter into a franchise relationship with Legacy.

Recently, no fewer than five franchisees prevailed in an arbitration proceeding in which the arbitrators rescinded promissory notes and franchise agreements based upon

Defendant Legacy's misrepresentations to the franchisees. While those claims were being arbitrated, two other franchisees were released from their franchise obligations after they too made claims of fraud against Defendant Legacy and its owners in other litigation. Since that time, at least two other franchisees who own and operate three Legacy locations have terminated their relationships with Legacy, all claiming to have been defrauded by Legacy, leaving the system and the brand in a terminal downward spiral.

As a consequence of the foregoing and the associated negative "good will" that now attaches to the Legacy name, on or about September 2, 2010, Plaintiffs sent a letter to the Turner Defendants, advising them of Plaintiffs' decision to terminate their franchise relationship with Defendant Legacy (the "September 2, 2010 Letter"). A true and correct copy of the September 2, 2010 Letter is attached hereto as Exhibit A.

In response to Plaintiffs' termination of the franchise, on or about October 28, 2010, Defendant Legacy notified Plaintiffs that it was purporting to exercise an option, pursuant to the parties' franchise agreement, to purchase Plaintiff Mamilove's interest in the Sugar Hill location through a nominee (the "October 28, 2010 Letter"). A true and correct copy of the October 28, 2010 Letter is attached hereto as Exhibit B.

Defendant Legacy has a history of exercising purchase options to retaliate against franchisees that terminate their franchise relationship with Defendant Legacy based upon Defendants' misrepresentations and fraud. In July 2009, for example, Defendant Legacy filed a motion for preliminary injunctive relief against RPNC, Inc. ("RPNC"), a former franchisee, and Robert and Pamela Carmical (the "Carmicals"), the owners of RPNC, in the District Court for the Northern District of Alabama, in which Defendant Legacy sought,

among other things, to take over RPNC's childhood education center in response to the Carmicals' termination of their franchise agreement with Defendant Legacy (the "2009 Alabama Action"). *See* Memorandum Opinion and Order dated July 23, 2009, attached hereto as Exhibit C. After a day-long evidentiary hearing, Defendant Legacy's motion for preliminary injunctive relief was denied. *See id.*

As in the 2009 Alabama action, Defendant Legacy's purchase option is unavailing here. The Franchise Agreement was entered into by Plaintiffs as a result of fraud and is void ex initio. Accordingly, Defendant Legacy cannot exercise the purchase option in the Franchise Agreement. Further, if Defendant Legacy is allowed to purchase Plaintiff Mamilove's interest in the Sugar Hill location, the Reymond Plaintiffs will forever lose the substantial investment they have made in the creation and maintenance of their business.

Accordingly, Plaintiffs respectfully request this Court issue a temporary restraining order ("TRO") and ultimately a preliminary injunction preventing Defendant Legacy and any nominee from attempting to enforce any post-termination provisions of the Franchise Agreement between the parties and in particular those having to do with an appraisal and forced sale of the Plaintiffss' franchise business.

## The Boundary Dispute

On November 1, 2010, Defendant Legacy demanded Plaintiffs remove the existing fence surrounding the rear of the Sugar Hill location (the "Existing Fence") and an outdoor classroom inside the Fence (the "Pavilion"), claiming both were located on property titled to Defendant Legacy ("Defendant Legacy's Property") (the "November 1, 2010 Letter"). A copy of the November 1, 2010 Letter is attached hereto as Exhibit D. On the same day,

Defendant Legacy also notified Plaintiffs that entry onto the rear of Defendant Legacy's Property to access the area inside the Existing Fence allegedly constituted criminal trespass. *See* November 1, 2010 Letter, Exhibit D. A copy of Plaintiffs' response to the November 1, 2010 Letter is attached hereto as Exhibit E.

In 2001-02, the parties entered into an oral contract for the sale of the Sugar Hill location (the "Contract"). Pursuant to the Contract, Plaintiffs have partially paid valuable consideration for, been in actual and exclusive possession of, and made valuable improvements to the realty inside the Existing Fence. Consequently, Plaintiffs have a claim of right under an equitable title to the realty inside the Existing Fence, regardless of the land description in the deed of sale. Furthermore, Defendant CCE, under the supervision of the Turner Defendants, erected the Existing Fence. If the Existing Fence is in fact located on Legacy's Property, Defendants should be equitably estopped from asserting legal title to the land inside the Existing Fence because their negligence has injured Plaintiffs, who made valuable improvements to that realty in reasonable reliance on the location of the Existing Fence. Accordingly, Plaintiffs respectfully request this Court issue a TRO and ultimately a preliminary injunction preventing Defendants from removing, altering or otherwise damaging the Existing Fence and Pavilion.

The Reymond Plaintiffs have also recently become aware that Defendant Franklin L. Turner has applied for a building permit from the City of Sugar Hill to erect a new fence between the Sugar Hill location and Defendant Legacy's Property (the "New Fence"). Plaintiffs have a prescriptive easement to use the rear of Legacy's Property to access the single opening in the Existing Fence for the purpose of mowing the enclosed playground,

5

having used said and improved property for this purpose publicly, continuously, without interruption, peaceably, and with notice of claim of right for at least seven (7) years.   If Defendant Legacy is allowed to erect a New Fence, Plaintiff's prescriptive easement to use the rear of Defendant Legacy's Property to mow inside the Fence would be obstructed. Accordingly, Plaintiffs respectfully request this Court issue a TRO and ultimately a preliminary injunction preventing Defendants from erecting the New Fence.

## II.   ARGUMENT & CITATIONS TO AUTHORITY

The purpose of an interlocutory injunction is to prevent one party from harming another while their respective rights are under adjudication. *See Bernocchi v. Forcucci*, 279 Ga. 460, 461, 614 S.E.2d 775 (2005).   A superior court may issue an interlocutory injunction to maintain the status quo if the balance of the parties' relative equities favor the movant. *Id.* A superior court has "broad discretion to decide whether to grant or deny a request for interlocutory injunction," and such discretion will not be disturbed "unless a manifest abuse of discretion is shown or there was no evidence on which to base the ruling." *Lee v. Envtl. Pest & Termite Control, Inc.*, 271 Ga. 371, 373, 516 S.E. 2d 76 (1999).   As discussed in more detail below, a TRO and ultimately a preliminary injunction are appropriate under the circumstances of this case.

### A.   Injunctive Relief is Necessary to Preserve the Status Quo.

Injunctive relief is generally issued to "preserve the status quo." *See Wilson v. Sermons*, 236 Ga. 400, 401, 223 S.E. 2d 816 (1976); *accord Poe v. Brown of Ga., Inc. v. Gill*, 268 Ga. 749, 750, 492 S.E. 2d 864 (1997).  This requirement is easily met here.

### 1.    The Purchase Option.

Plaintiffs seek a TRO and ultimately a preliminary injunction preventing Defendant Legacy and any nominee from purchasing Mamilove's interest in the Sugar Hill location. Such an interlocutory injunction would preserve the status quo because it would allow Plaintiffs to continue operating the Sugar Hill location, as they are currently doing and have been doing for many years, and prevent Defendant Legacy from affirmatively changing the current status of the parties' relationship. Such an interlocutory injunction would neither affect the issues to be litigated in this matter nor alter the rights of the parties under their franchise agreement.

### 2.    The Fence and Pavilion and the New Fence.

Plaintiffs seek a TRO and ultimately a preliminary injunction preventing Defendants from removing, altering or otherwise damaging the Existing Fence and the Pavilion. Plaintiffs also seek a TRO and ultimately a preliminary injunction preventing Defendants from erecting the New Fence. These interlocutory injunctions would preserve the status quo because they would prevent Defendants from taking unilateral, self-help measures to alter the current boundary line between the Sugar Hill location and Legacy's Property. These interlocutory injunctions would simply freeze the existing property rights of the parties pending this Court's resolution of Plaintiffs' claims and would not affect the issues to be litigated in this matter.

**B.      Plaintiffs Will Suffer Irreparable Harm if an Injunction is Not Issued.**

In considering whether to grant injunctive relief, this Court should consider "whether greater harm would result from granting or refusing the injunction." *See Wilson*, 236 Ga. at 401, 223 S.E. 2d at 817. The Court may issue an interlocutory injunction even where a legal remedy is available if the "action at law or the existence of a common law remedy [is] not as complete or effectual as the equitable relief." *See* O.C.G.A. § 23-1-4. "It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as to the remedy in equity." *See Atl. Coast Line R. Co. v. Gunn*, 185 Ga. 108, 111, 194 S.E. 365 (1937) (*quoting Purcell v. Pilgrim*, 152 Ga. 61, 64, 108 S.E. 515 (1921)); *accord Clear-Vu Cable, Inc. v. Town of Trion*, 244 Ga. 790, 793, 262 S.E. 2d 73 (1979).

**1.      The Purchase Option.**

If Defendant Legacy purchases Mamilove's interest in the Sugar Hill location, Plaintiffs will suffer irreparable harm because their ownership of the realty at the Sugar Hill location would be terminated. "Where an interest in land is threatened, 'such harm is deemed irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed.' " *Westpark Walk Owners, LLC v. Stewart Holdings, LLC*, 288 Ga. App. 633, 635, 655 S.E.2d 254 (2007) (quoting *Focus Entm't v. Partridge Greene, Inc.*, 253 Ga. App. 121, 127, 558 S.E.2d 440 (2001) (physical precedent only)).

Further, if Defendant Legacy purchases Mamilove's interest in the Sugar Hill location, the Reymond Plaintiffs will forever lose their business and their livelihoods will be immediately, materially and detrimentally affected. No adequate legal remedy exists to

8

compensate the Reymond Plaintiffs for this harm because it would be difficult if not impossible to quantify the resulting monetary damages. *See Poe & Brown.*, 268 Ga. at 750, 492 S.E. 2d at 865 (reversing the denial of a request for an interlocutory injunction where damages would be difficult to calculate). Furthermore, monetary compensation after the resolution of this matter through litigation would hardly be as prompt and efficient as maintenance of the status quo.

2.     The Existing Fence and Pavilion.

Plaintiffs will suffer irreparable harm if the Defendants remove, alter or otherwise damage the Existing Fence and Pavilion. Real property includes fixtures, *see* O.C.G.A. § 44-1-2(a)(2), which are "[a]nything which is intended to remain permanently in its place," *see* O.C.G.A. § 44-1-6. "Under our law, real property includes not only the land but all improvement theron . . . ." *Fayettee County Board of Tax Assessors v. Georgia Utilities Co.*, 186 Ga. App. 723, 725, 368 S.E.2d 326 (1988). Harm to an interest in land is deemed irreparable as a matter of law. *See Westpark Walk, supra* at 8. The Existing Fence and Pavilion are fixtures: they are attached the realty at the Sugar Hill location and the Reymond Plaintiffs never intended that they be relocated or moved. *See Tifton Corp. v. Decatur Fed. Savings & Loan Ass'n*, 136 Ga. App. 710, 711, 222 S.E.2d 115 (1975) ("[A]nything intended to remain permanently in place *such as fencing* . . . is a part of the realty") (emphasis added).

3.     The New Fence.

If Defendant Legacy erects a new fence at the rear of Defendant Legacy's Property, Plaintiffs will suffer irreparable harm. Plaintiffs' prescriptive easement to access the rear of Defendant Legacy's Property to mow the playground located inside the Existing Fence

9

would be obstructed. Harm to an interest in land is deemed irreparable as a matter of law, *see Westpark Walk, supra* at 8, and an interlocutory injunction may be issued to prevent the obstruction of an easement, *see Rife v. Corbett,* 264 Ga. 871, 455 S.E.2d 581 (1995) (affirming temporary injunctive relief to protect express easement).

C.     **The Equities Weigh in Favor of Injunctive Relief for Plaintiffs.**

Finally, this Court must balance the relative equities of the parties to determine if injunctive relief is appropriate. *See Envtl. Pest & Termite Control,* 271 Ga. at 373, 516 S.E. 2d at 78. When it appears that the injunction, if granted, would not oppress the defendant, but if denied, the complainant would be practically remediless, discretion should be exercised to preserve the status quo. *See Westhampton, Inc. v. Kehoe,* 227 Ga. 642, 646, 182 S.E. 2d 430 (1971). "[T]he possibility that a party obtaining a preliminary injunction may not win on the merits at trial does not determine the propriety or validity of a trial court's [decision to grant] the preliminary injunction." *See Garden Hills Civic Assoc. Inc., MARTA,* 273 Ga. 280, 281, 539 S.E. 2d 811 (2000) (*quoting Glen Oak v. Henderson,* 258 Ga. 455, 457, 369 S.E. 2d 736 (1988)).

1.     **The Purchase Option.**

The balance of the equities favors issuance of a TRO and ultimately a preliminary injunction preventing Defendant Legacy and any nominee from attempting to enforce any post-termination provisions of the Franchise Agreement between the parties such as those having to do with an appraisal and forced sale of the Plaintiffs' franchise business. Defendant Legacy's ability to purchase Mamilove's interest in the Sugar Hill location derives from an option in the parties' franchise agreement, which Plaintiffs were fraudulently induced to execute by Defendants. Defendants will not be prejudiced by an injunction

preventing them from purchasing Mamilove's interest in the Sugar Hill location pending adjudication of Plaintiffs' claims on the merits. If the Court finds the Franchise Agreement is in fact valid and enforceable, Defendant Legacy may proceed with their purchase at that time.

In contrast, the harm to the Plaintiffs in allowing Defendant Legacy to exercise their purported purchase option would be grievous. As the district court in the 2009 Alabama Action stated

> The equities tend to favor [the franchisees], especially to the extent [Legacy Academy, Inc. ("Legacy")] seeks to prevent [the former franchisees] from *ever* operating [their childhood education center] as anything other than a Legacy Academy. . . . [The former franchisees] own both the building that houses the [childhood education center], and the land upon which it sits. To forever restrict [the former franchisees'] use of their property to a single purpose would place a far greater burden on [the former franchisees] than the burden [Legacy] would bear if [the former franchisees] were allowed to operate the facility as something other than a Legacy Academy. This is especially true considering that [the former franchisees] did not build the facility themselves, but instead purchased land and building *after* Legacy . . . approached them about entering into a Franchise Agreement.

Exhibit C at 11 n.25. Given that the same facts are present here, *see* Complaint ¶¶ 2, 6, 68, the balance of the equities similarly favors Plaintiffs.

### 2.    The Existing Fence and Pavilion.

The balance of the equities favors issuance of a TRO and ultimately a preliminary injunction preventing Defendants from removing, altering or otherwise damaging the Existing Fence and Pavilion. First, the Plaintiffs have a claim of right under an equitable title to the realty inside the Existing Fence pursuant to an oral contract with Defendants that has been partially performed. Second, if the Existing Fence and Pavilion are located on Legacy's Property, this is attributable to Defendants' gross negligence in placing the Existing Fence.

11

Accordingly, Defendants should be equitably estopped from asserting legal title to the portion of Defendant Legacy's Property that may lie within the Existing Fence. Third, Defendants never asserted any interest in any portion of Defendant Legacy's Property within the Existing Fence until Plaintiffs exercised their rights to withdraw from the Franchise Agreement due to fraud and various misrepresentations. Defendants' current position with respect to the boundary dispute is retaliatory, being motivated solely by a desire to deter Plaintiff from and/or punish Plaintiffs for exercising their rights. Those who would have equity must do equity and Defendants' unclean hands should tip the balance of the equities decisively in Plaintiffs' favor.

### 3.    The New Fence.

The balance of the equities favors issuance of a TRO and ultimately a preliminary injunction preventing Defendants from erecting the New Fence. Plaintiffs have accessed the rear of Legacy's Property to access the single opening in the Existing Fence, built by Defendant CCE and overseen by the Turner Defendants, for the purpose of mowing the enclosed playground publicly, continuously, without interruption, peaceably, and with notice of claim of right for at least seven (7) years. While never having granted permission to do so, Defendants also never once objected to this practice. Defendants' current position with respect to the boundary dispute is retaliatory and their unclean hands tip the balance of equities in favor of the Plaintiffs.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that this Court grant this Motion for Temporary Restraining Order.

Respectfully submitted this 22nd day of November, 2010.

Cary Ichter, Esq.
Georgia Bar No. 382515
Dan Davis, Esq.
Georgia Bar No. 746811
**Ichter Thomas, LLC**
Tower Place 100, Suite 1530
3340 Peachtree Road, NE
Atlanta, GA 30326-1084
Phone: 404-869-5243
Fax: 404-869-7610
Email:cichter@ichterthomas.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT THEREOF** was served upon the following via U.S. mail, properly addressed and postage prepaid:

William P. Eiselstein, Esq.
**Miller & Martin, PLLC**
Suite 800
1170 Peachtree St., N.E.
Atlanta, Georgia 30309-7649

This 22nd day of November, 2010.

Dan Davis, Esq.
Georgia Bar No. 746811

13

## SUPERIOR COURT OF GWINNETT COUNTY
## IN THE STATE OF GEORGIA

MAMILOVE, LLC, Michele Reymond, and )
Lorraine Reymond, )
                                 )
               Plaintiffs, )         Civil Action File No.
                                   )
vs.                                )       _____
                                   )
Legacy Academy, Inc., Commercial )
Contractors Enterprises, Inc., Franklin L. )
Turner, Melissa V. Turner, Corporate John )
Does X, Y, and Z, and Individual John )
Does A, B, and C, )
                                   )
               Defendants. )

## VERIFICATION OF STATEMENTS OF FACTS IN COMPLAINT AND PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT THEREOF

Michele Reymond, hereby states under oath that she is competent to make this verification, is a manager of MAMILOVE, LLC, and that the facts set forth in the Plaintiff's Complaint and Plaintiff's Emergency Motion for Temporary Restraining Order and Brief In Support Thereof in this action are true and correct based upon her personal knowledge, information, and belief.

                                       _____
                                       Michele Reymond, Manager
                                       MAMILOVE, LLC

Sworn to and subscribed before me
This 19th day of November, 2010.

Notary Public (sign and seal)