**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MAMILOVE, LLC, Michele Reymond, and Lorraine Reymond, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action File No. |
| vs. | ) ) | 1:10-CV-4175 RWS |
| | ) ) | |
| Legacy Academy, Inc., Commercial Contractors Enterprises, Inc., Franklin L. Turner, Melissa V. Turner, Corporate John Does X, Y, and Z, and Individual John Does A, B, and C, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs MAMILOVE, LLC,[1] Michele Reymond, and Lorraine Reymond (collectively, "Plaintiffs"), by and through undersigned counsel, hereby respond to Defendants Legacy Academy, Inc. ("Defendant Legacy"), Commercial Contractors Enterprises, Inc. ("Defendant CCE"),[2] Franklin L. Turner, and Melissa V. Turner's

---

[1] Plaintiff MAMILOVE, LLC is misidentified as "MIMILOVE, LLC" in Defendants' Motion to Dismiss.

[2] Defendant Commercial Contractors Enterprises, Inc. is misidentified as "COMMERCIAL CONTRACTORS, INC." in Defendants' Motion to Dismiss.

1

(collectively, "Defendants") Motion to Dismiss Count I to V of Plaintiffs' Complaint (the "Motion to Dismiss"), showing the Court as follows:

## INTRODUCTION

The issues raised in the Complaint and Defendant's Motion to Dismiss were previously adjudicated in a consolidated arbitration proceeding between five (5) former Legacy franchisees (the "Various Franchisees") and Defendants, denominated as *Legacy Academy, Inc. et al. v. Cam-Syd Enters., Inc. et al.*, AAA Case No. 30-114-00286-09 (the "Arbitration").   After over a year of proceedings and a two (2) week hearing, the Arbitration Panel rejected Defendants' arguments, which were nearly identical to those asserted in the Motion to Dismiss, concluded that  Defendant Franklin L. Turner, Defendant Melissa V. Turner (jointly, the "Turner Defendants") and Defendant Legacy had violated 16 C.F.R. § 436 (the "FTC Rule"), declared the promissory notes executed by the Various Franchisees in favor of Defendant CCE to be "void . . . unenforceable . . . and . . . cancelled," and awarded the Various Franchisees $1,036,347.00 in damages and attorneys' fees, as well as $84,745.95 in fees and expenses (the "Award").  A copy of the Award is attached hereto as Exhibit A.   On or about December 1, 2010, the Superior Court of Gwinnett County, Georgia issued on Order confirming the Arbitration Award, a copy of which is attached hereto as Exhibit B.  Defendants'

second bite at the apple here is no more availing.

First, Counts I to V are timely.  Due to the intentional and active concealment of material facts by the Turner Defendants and Defendant Legacy, Plaintiffs did not discover, nor reasonably should have discovered, their causes of actions until about or around September 2010, and the applicable periods of limitation were tolled until that date.   Second, Count I (violation of a legal duty arising under the FTC Rule pursuant to O.C.G.A. § 51-1-6) states a claim upon which relief may be granted precisely <u>because</u>, rather than in spite, of the absence of a cause of action in the Federal Trade Commission Act, 15 U.S.C. §§ 41-58, as amended (the "FTC Act").

Third, Count III (negligent misrepresentation) is pled with more than sufficient particularity because, by its plain terms and as per precedent from this Court, the heightened requirements of Fed. R. Civ. P. 9(b) are not applicable to it. Furthermore, Count II (fraud) and Count IV (Georgia civil RICO) are pled with sufficient particularity because the Complaint, interpreted as a whole, alleges the perpetrator, time, and place of the conduct complained of.

Finally, Count V (rescission) states a claim upon which relief may be granted because it plainly alleges fraudulent inducement, and long-standing

exceptions to restoration as a condition precedent to rescission are present here. For these reasons, Defendants' Motion to Dismiss is due to be denied.

## ARGUMENT AND CITATION TO AUTHORITY

**I.     Counts I to IV are Timely Because the Relevant Period of Limitation Did Not Commence Until About or Around September 2010.**

While the Reymond Plaintiffs entered into the Franchise Agreement on September 13, 2001, the applicable periods of limitations did not commence until significantly later, and Counts I to IV are therefore timely.

### A.     Counts I to III are Timely.

Under Georgia law, the period of limitations for "injuries to personalty," i.e., Counts I to III, is four (4) years "after the right of action accrues." O.C.G.A. § 9-3-31. "Actual fraud," however, tolls this limitation period "'until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the fraud.'" *Coffee v. Gen. Motors Acceptance Corp.*, 30 F. Supp. 2d 1376, 1381 (S.D. Ga. 1998) (quoting *Hahne v. Wylly*, 406 S.E.2d 94, 96 (Ga. Ct. App. 1991)). "Actual fraud involves moral turpitude and requires an intentional deception by false representation or by concealment of a fact which 'has the effect of debarring and deterring the plaintiff from his action.'" *Id.* (quoting *Shipman v. Horizon Corp.*, 267 S.E.2d 244, 245 (Ga. 1980)).

4

Plaintiffs did not discover Defendants' violation of duty under the FTC Rule, fraud, or negligent misrepresentations until about or around September 2010, *see* Complaint ¶ 78, which was only about two (2) months before the Complaint was filed, and could not have reasonably discovered this any earlier given that Defendant Legacy and its agents and alter egos, the Turner Defendants, intentionally concealed material facts for the express purpose of preventing Plaintiffs from discovering they had legally cognizable claims for relief, *compare Hanhe*, 406 S.E.2d at 96 (holding that the fraud claim filed in 1989 based on alleged misrepresentations made in 1984 concerning septic tank was not time barred because the problem with septic tank did not became apparent until 1988 due to the defendant's attempts to cover-up the problem).

For example, the Defendant Legacy made exaggerated and deceptive representations to the Reymond Plaintiffs about the profitability of Legacy franchises (the "Earnings Claims"), telling Plaintiffs they could expect to net grossly inflated sums of money, as other Legacy franchisees had, if they would simply raise their rates and offer only full-time childcare services. *See* Complaint ¶¶ 13, 46, 93-94.[3] Defendant Legacy and the Turner Defendants then intentionally

---

[3] Plaintiffs recognize that these factual allegations are pled with some generality. Rather than risk inadvertently waiving the right to seek remand by invoking this Court's jurisdiction at this time by filing a motion to amend the

concealed information about the desperate financial condition of Defendant Legacy's other franchises, thus preventing Plaintiffs' from determining the mendacity of the Earnings Claims.  *See id*. ¶¶ 13, 30-32, 93-94.  The Turner Defendants also actively hid the amounts Plaintiffs overpaid Defendant CCE to acquire and develop, and Defendant Legacy for various goods and services used in the operation of, the Sugar Hill location.  *See id*. ¶¶ 13, 54-57, 93-94.

Plaintiffs did not discover they had viable causes of action sounding in tort until about or around September 2010, when they obtained legal counsel and terminated their franchise relationship with Defendant Legacy.  Any other conclusion would necessarily imply Plaintiffs willingly paid royalty fees to Defendant Legacy until August 2010 despite knowing that they had been defrauded.  Plaintiffs also could not have reasonably uncovered this information earlier given the active deception of Defendant Legacy and the Turner Defendants, who had a monopoly on information about the Legacy Academy franchise system as a whole and engaged in a concerted effort to conceal their fraudulent conduct from Plaintiffs.  Consequently, Counts I to III are timely.

---

Complaint, Plaintiffs state that they can, and with leave of Court will, file an Amended Complaint averring such facts.

**B.    Count IV is Timely.**

The period of limitations for civil proceedings under the Georgia RICO Act (Count IV) is five (5) years "after the conduct in violation of a provision of this chapter terminates or the cause of action accrues." O.C.G.A. § 16-14-8.  Under Georgia law, the "cause of actions accrues" when the plaintiff discovers, or reasonably should have discovered, that he has suffered economic loss and that this loss is part of a pattern.[4]  *See S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 555 S.E.2d 478, 481-82 (Ga. Ct. App. 2001).

Plaintiffs only realized their operational losses (as compared to the Earnings Claims made by Defendants) were due to Defendants' fraud from the inception of

---

[4] *S. Intermodal* is ambiguous as to the "pattern discovery" element of the rule. *See S. Intermodal*, 555 S.E.2d at 868, 870 n. 1, 4 (noting *Rotella v. Wood*, 528 U.S. 549 (2000), rejected the "pattern discovery" element of the limitations period applicable to the federal RICO statute, but declining to hold the same with respect to the Georgia RICO Act and noting "[w]e do not decide whether [plaintiff] knew, or should have discovered, that its injury was part of a pattern of racketeering activity").  Subsequent cases, however, make plain that the "pattern discovery" element of limitations period continues to exist under Georgia law. *See, e.g., Peery v. CSB Behavioral Health Sys.*, No. CV-106-172, 2008 WL 4425364, at *20 (S.D. Ga. Sept. 30, 2008) (including "pattern discovery" in formulation of rule); *Cochran Mills Assocs. v. Stephens*, 648 S.E.2d 764, 770 (Ga. Ct. App. 2007) (affirming trial court's analysis that civil RICO claim was time barred because plaintiff knew, or should have known, "of their injury and that it resulted from racketeering activity" two (2) years before complaint was filed); *Austin v. Cohen*, 602 S.E.2d 146, 150 n. 4 (Ga. Ct. App. 2004) ("A civil RICO cause of action accrues when a plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern").

the franchise relationship about or around September 2010. *See supra* at 4-5. Even if Plaintiffs should have discovered their economic injury more than five (5) years before the Complaint was filed, Plaintiffs did not know, and could not have reasonably known, this injury was attributable to a pattern of racketeering activity by Defendants, who consciously deceived Plaintiffs about the existence and extent of their criminal enterprise. *See* Complaint ¶¶ 108-114. Because Plaintiffs did not, and could not have reasonably, discovered they were economically injured, or that that injury was the result of a pattern, until around or about September 2010, Count IV is timely.

## II.     Counts I to IV State Claims Upon Which Relief May Be Granted.

### A.     Plaintiffs State a Viable Claim Pursuant to O.C.G.A. § 51-1-6 for Defendants' Violation of a Duty Arising Under the FTC Rule.

O.C.G.A. § 51-1-6 states in full as follows:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

Plaintiffs agree the FTC Act does not create a private cause of action, but "51-1-6 is designed to provide a cause of action for the breach of a legal duty where one does not otherwise exist. The plain language of the statute shows that it operates where 'no cause of action is given in express terms.'" *Cruet v. Emory*

*Univ.*, 85 F. Supp. 2d 1353, 1354 (N.D. Ga. 2000) (applying Georgia law and quoting O.C.G.A. § 51-1-6). Thus, the exact opposite of Defendants' argument is true:  O.C.G.A. § 51-1-6 creates a cause of action "***only*** where no cause of action is given in express terms."  *Id*. at 1355 (emphasis added); *accord, e.g., Phillips v. DAP, Inc.*, 10 F. Supp. 2d 1334, 1336-37 (N.D. Ga. 1998) [§§ 51-1-6 and 51-1-8] . . . do not provide a[ ] . . . right of action where an express cause of action already exists").   And, directly contrary to Defendants' contention, courts applying Georgia law have repeatedly and consistently held that O.C.G.A. § 51-1-6 creates a separate cause of action in tort for a breach of duty created by another law.[5]

---

[5] *See, e.g., Amick v. BM & KM, Inc.*, 275 F. Supp. 2d 1378, 1383 (N.D. Ga. 2003) (allowing action under O.C.G.A. § 51-1-6 for violation of innkeepers statute and for statute prohibiting discrimination in public places based on the use of a service animal); *Diedrich v. Miller & Meier & Assocs., Architects & Planners, Inc.*, 334 S.E.2d 308, 311 (Ga. 1985) (allowing cause of action under O.C.G.A. § 51-1-6 for violation of trade name protection arising under common law); *Sutter v. Hutchings*, 327 S.E.2d 716, 719 (Ga. 1985) (recognizing cause of action under O.C.G.A. § 51-1-6 for violation of statutes governing sale of alcoholic beverages), *abrogated by* O.C.G.A. § 51-1-40 *on other grounds*; *Daigrepont v. Teche Greyhound Lines*, 7 S.E.2d 174, 176 (Ga. 1940) (stating cause of action would exist under precursor to O.C.G.A. § 51-1-6 where common carrier breaches duty to transport person to destination); *Peters v. Hyatt Legal Servs.*, 440 S.E.2d 222, 227 (Ga. Ct. App. 1993) (holding plaintiff stated cause of action under O.C.G.A. § 51-1-6 against notary breached statutory duty to verify identity of person signing papers); *St. Mary's Hosp. of Athens, Inc. v. Radiology Prof'l Corp.*, 421 S.E.2d 731, 736 (Ga. Ct. App. 1992) (holding failure of private hospital to comply with its own by-laws in terminating plaintiff's staff privileges authorized recovery pursuant to O.C.G.A. § 51-1-6); *Landis v. Rockdale County*, 427 S.E.2d 286, 290 (Ga. Ct. App. 1992) (holding claim arising from police officer's failure to arrest drunken

Defendants' case law is unavailing.  First, in *Parris v. State Farm Mut. Auto Ins. Co.*, 494 S.E.2d 244, 246 (Ga. Ct. App. 1997), the court stated OCGA § 51-1-6 "creates no cause of action" but "authorizes the recovery of damages for the breach of a legal duty otherwise created."  The Court then affirmed summary judgment against plaintiffs' claim pursuant to O.C.G.A. § 51-1-6 for an insurer's non-compliance with certain disclosure obligations under O.C.G.A. § 33-3-28, which also did not create a cause of action.  <u>This holding does not follow the court's own rule</u>.  The absence of a cause of action does not mean a law creates no duty – rather, it means litigation by private parties is not a mechanism available to enforce that duty.  *Parris*' holding directly conflicts with the plain meaning of the statute and this Court's holding that O.C.G.A. § 51-1-6 provides recovery for the breach of a duty **only** when a private cause of action is not otherwise available.  *See supra* at 8-9.

Second, Defendants cite *Reilly v. Alcan Aluminum Corp.*, 528 S.E.2d 238 (Ga. 2000), in which the plaintiff brought a claim for violation of a duty under

driver, which resulted in death of plaintiff's spouse, pursuant to O.C.G.A. § 51-1-6 was viable because statute prohibiting drunk driving created duty of police to protect public from drunk driving); *Cardin v. Telfair Acres of Lowndes County, Inc.*, 393 S.E.2d 731, 733 (Ga. Ct. App. 1990) (concluding Occupational Health & Safety Administration regulations were "evidence of a legal duty, violation of which may give a cause of action under O.C.G.A. § 51-1-6).

O.C.G.A. § 34-1-2, which prohibits age discrimination in employment, pursuant to O.C.G.A. § 51-1-6.  *See Reilly*, 528 S.E.2d at 239.   The Northern District of Georgia dismissed this claim, and, on appeal, the Eleventh Circuit certified to the Supreme Court of Georgia the question of whether O.C.G.A. § 51-1-6 created a cause of action for violation of  O.C.G.A. § 34-1-2. *See id.*

The Supreme Court of Georgia held the district court's dismissal was proper because the plaintiff's "status as an at-will employee [wa]s dispositive." *Id*. According the Georgia Supreme Court, the doctrine of at-will employment, as codified at O.C.G.A. § 34-7-1, disposed of any cause of action for wrongful discharge, absent the General Assembly's enactment of a statute specifically creating such a cause of action.  *Id*. at 240.   As this Court has stated, "even a cursory reading of *Reilly* indicates that the decision is based heavily upon the special status of the employment at-will doctrine in Georgia jurisprudence." *Amick*, 275 F. Supp. 2d at 1383.   Since Plaintiffs' claims here do not involve the same subject matter and are not asserted against an employer, this "lawsuit is easily distinguishable from *Reilly.*" *Id*.

Finally, Defendants cite *Flynn v. Everything Yogurt*, Civ. A. No. HAR-92-3421, 1993 WL 454355 (D. Md. Sept. 14, 1993) and *St. Martin v. KFC Corp.*, 935 F. Supp. 898 (W.D. Ky. 1996) in support of a vaguely articulated and ultimately

unpersuasive conflict preemption argument.   First, the absence of a private cause of action in the FTC Act does not preclude a <u>state</u> law claim based on a violation of a duty arising under the FTC Rule.   *Cf. Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986) (noting violation of Federal Food, Drug and Cosmetic Act ("FDCA") could create rebuttable presumption of negligence under state law despite absence of federal private cause of action).

Additionally, a cause of action under O.C.G.A. §51-1-6 for violation of a duty created by the FTC Rule is not impliedly preempted by the FTC Act, for multiple reasons.  Initially, there is a presumption against preemption "'unless that was the clear and manifest purpose of Congress.'"   *Wyeth v. Levine*, 129 S.Ct. 1187, 1195 (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  This is even more the case given "the long history of state common-law and statutory remedies against . . . unfair business practices," the subject matter of Section 5 of the FTC Act.  *California v. ARC Am. Corp.*, 490 U.S. 93, 101-02 (1989).

*St. Martin*, however, ignored this presumption and implicitly concluded conflict preemption was warranted based on a "freewheeling judicial inquiry" into "generalized notions of congressional purposes" derived from the absence, rather than the presence, of certain text in the FTC Act.  *Wyeth*, 129 S.Ct. at 1207-08 (Thomas, J., concurring in the judgment). Indeed, if Congress thought state

lawsuits posed an obstacle to the objectives of the FTC Act, it surely would have included an express preemption provision at some point during the FTC Act's ninety-seven (97) year history. *Cf. id.* at 1200 (so stating with respect to the FDCA in route to concluding FDA's labeling approval did not preempt failure to warn tort claim). The FTC Act, however, does not include any clause directly preempting state law.

Second, a private cause of action to enforce the FTC Rule would not interfere with the achievement of Congress' purposes in enacting the FTC Act. For example, despite the fact that "virtually all" states have enacted unfair and deceptive acts and practices laws modeled after the FTC Act ("Little FTC Acts"), many of which provide for private causes of action, *see* W. Michael Garner, *Franchise & Distribution Law & Practice* § 9.34 (2010), the FTC Act does not preempt the Little FTC Acts absent a conflict with an express FTC Rule, *see United States v. Philip Morris Inc.*, 263 F. Supp. 2d 72, 78 (D.D.C. 2003). Clearly, therefore, private causes of action premised on conduct prohibited by the FTC Act do not interfere with the FTC's enforcement efforts. In fact, allowing the duties under the FTC Rule to be enforceable pursuant to state law would allow private attorneys general to promote the public interest by uncovering fraud and misrepresentation attendant to pre-sale franchise disclosures. *See id.* ("Indeed, the

[Federal Trade Commission ("FTC")] has long *encouraged* use of overlapping state deceptive practices statutes because problems in the marketplace exceed the [FTC]'s enforcement capabilities").

In fact, the FTC itself has concluded that there is no "statutory basis" or "compelling reason" to "preempt[] the states in the franchise pre-sale disclosure arena." *See* Bureau of Consumer Protection, FTC, *Disclosure Requirements and Prohibitions Concerning Franchising* 270 (2004).[6]  Because agencies, such as the FTC, "have a unique understanding of the statutes they administer and an attendant ability to make informed determinations about how state requirements may pose 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Wyeth*, 129 S.Ct. at 1201 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)), the FTC's determination is entitled to due deference.

Finally, judicial decisions applying Georgia tort law between private litigants would not in any way effect the FTC's enforcement of the FTC Act. Since the FTC would not be a party to such actions, there would be no *res judicata* effect.  *Cf., e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1302 (11th Cir. 2008) (concluding limited federal interest in "private tort action over private duties tangentially related to the federal gun laws" because the outcome

---

[6] *Available at* http://www.ftc.gov/os/2004/08/0408franchiserulerpt.pdf.

14

"cannot possibly have any res judicata effect that would apply to the [Bureau of Alcohol, Tobacco, Firearms and Explosives]").  Furthermore, adjudication by the state courts of Georgia would not pose a serious threat to any hypothetical federal interest in the uniformity and consistency of federal franchise disclosure requirements because state courts are presumptively competent to apply federal law, *see id.*, 552 F.3d at 1301, and would be guided by federal court interpretations of FTC Rule,  *see Excel Transp. Servs., Inc. v. Sigma Vita, Inc.*, 654 S.E.2d 665, 669 n. 4 (Ga. Ct. App. 2007) ("[While] federal decisions are not binding upon our state courts, they are persuasive, particularly where . . . they construe federal provisions and there are no binding state authorities directly addressing the issue"). And, even if courts applying Georgia law "misinterpreted" the FTC Rule, federal courts would not be bound by that interpretation.  *See Williams v. Taylor*, 529 U.S. 362, 377 (2000) (noting federal courts are not required "to defer to state judges' interpretations of federal law").

### B.    Count II (Negligent Misrepresentation) is Pled With Sufficient Particularity.

Contrary to Defendants' assertion unsupported by authority, the

Eleventh Circuit does not require heightened pleading for a claim of negligent misrepresentation. Though district courts outside of this jurisdiction have required plaintiffs to plead their negligent misrepresentation claims under Rule 9(b), cases issued by judges in the Northern District of Georgia have not required plaintiffs to do so.

*Atwater v. Nat'l Football League Players Ass'n*, No. 1:06-CV-1510-JEC, 2007 WL 1020848, at *14 (N.D. Ga. Mar. 28, 2007) (collecting cases).  To the extent the Court is inclined to establish new precedent, the discussion immediately following demonstrates that Count II is plead with sufficient particularity when read within the context of the entire Complaint.

### C.   Count II (Fraud) and IV (Georgia civil RICO) are plead with sufficient particularity

The application of Rule 9(b) should not "abrogate the concept of notice pleading." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988). Thus, the particularity required to plead fraud is satisfied if the <u>Complaint</u>, rather than discrete allegations, sets forth identity, place and time. *See* Motion to Dismiss at 7 (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). Here, this standard is met because the Background Facts and Count II and IV of the Complaint, read in conjunction, put the requisite Defendants on notice as to what <u>omissions</u> were made, by who, why they were misleading, and what was obtained as a consequence.

Plaintiffs allege, for example, that Defendant Legacy, by and through its agents and alter egos, the Turner Defendants, did not provide Plaintiffs a balance sheet, an income statement, or a statement of changes in the financial position for Defendant Legacy for the three (3) fiscal years preceding the execution of the

Franchise Agreement.  *See* Complaint ¶¶ 7-10, 13, 37, 94.  Also, neither Defendant Legacy nor the Turner Defendants disclosed to Plaintiffs in the Uniform Franchise Offering Circular that a principal payment of $200,000.00 for land acquisition and development, as well as interest, would be part of the total fees and expenses required to be paid in order for Plaintiffs to open a Legacy Academy for Children Development Center at the Sugar Hill location.  *See id.*  ¶¶ 59-66.

Both these omissions were misleading because they allowed Defendant Legacy and the Turner Defendants to conceal the excessive fees charged under the Franchise Agreement.  *Id.* ¶¶ 91-94.  As a result, the Reymond Plaintiffs entered into the Franchise Agreement, *id.* ¶¶ 67, 91-92, causing the Reymond Plaintiffs to transfer significant sums of money, *id.* ¶ 95, to Defendant Legacy in the form of various fees, *id.* ¶¶ 60-61, 63, 69, 94, and to the Turner Defendants in the form of funds diverted through Defendant Legacy, *id.* ¶¶ 7-10, 13.

The Turner Defendants also did not disclose to Plaintiffs, at any time, the basis for calculating or the actual amount of consideration to be received by the Turner Defendants from Defendant CCE's acquisition and development of the Sugar Hill location.  *Id.* ¶¶ 53-54. This omission was misleading because it allowed the Turner Defendants to conceal their personal financial gain from Defendant CCE's acquisition and development of the Sugar Hill location.  *Id.* ¶¶ 7-10, 13, 55.

As a result, Plaintiff Mamilove executed a promissory note (the "Note"), *id*. ¶¶ 52, 65, 68, 91-92, and the Reymond Plaintiffs entered into the Franchise Agreement, *id*. ¶¶ 67, 91-92, causing Plaintiffs to transfer significant sums of money, *id*. ¶ 95, to Defendant Legacy in the form of various fees, *id*. ¶¶ 60-61, 63, 69, 94, to the Turner Defendants in the form of funds diverted through Defendant Legacy, *id*. ¶¶ 7-10, 13, and to Defendant CCE, *id*. ¶ 52. These same allegations are sufficient to plead a claim for violation of the Georgia RICO Act. The conduct complained of constitutes theft by taking and deception in violation of O.C.G.A. §§ 16-8-2 and 16-8-3, which are predicate acts that are alleged to constitute a pattern of racketeering by Defendants.

The Complaint informs each individual Defendant of the nature of their participation in the fraud complained of. The Complaint, interpreted as a whole, alleges what omissions were made, by who, why they were misleading, and what was obtained as a consequence with sufficient particularity to put the requisite Defendants on notice of the allegations against them, which is sufficient to state claim for relief.

### D.    Plaintiffs State a Viable Claim for Rescission (Count V).

First, Plaintiffs have adequately pled that the Franchise Agreement and the Note were fraudulently induced. As Defendants correctly note, Plaintiffs alleged

that Defendant Legacy's violation of the disclosure requirements under the FTC Rule entitled the Reymond Plaintiffs to rescind the Franchise Agreement and Plaintiff Mamilove to rescind the Note. *See* Complaint ¶ 120. As Plaintiffs alleged, such conduct was fraudulent. *See id.* ¶ 93 (failure to disclose all relevant information concerning the purchase of a Legacy Academy franchise was fraudulent); ¶¶ 94-95 (failure to give accurate information concerning then-existing franchises, financial statements, earnings claims, identify of and revenues derived by Defendant Legacy's affiliates, kickbacks to suppliers and affiliates, and fees and expenses was "fraudulent conduct"). The fact that the phrase "fraudulent inducement" is not used on Count V of the Complaint itself hardly warrants the conclusion that the factual allegations in the Complaint, taken in toto, mean Count V fails to state a claim upon which relief may be granted.

Second, restoration is

> not an absolute rule, and does not require that the defrauding party be placed in the exact status quo, but only that he be placed substantially in his original position and that the party rescinding derives no unconscionable advantage from the rescission. One seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so; he need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible or when to do so would be unreasonable.

*Crews v. Cisco Bros.*, 411 S.E.2d 518, 519 (Ga. Ct. App. 1991) (citations omitted).

Here, restoration is not required.  The Reymond Plaintiffs have already tendered the benefits they received by virtue of their relationship with Defendants, if any, in the form of grossly excessive royalty payments to Defendant Legacy and inflated loan payments to Defendant CCE over the last eight (8) years. Furthermore, rescission of the Franchise Agreement would not confer any unconscionable advantage on the Plaintiffs, but would rather halt their financial hemorrhaging proximately resulting from Defendant Legacy and the Turner Defendant's fraud at the inception of the parties' relationship.

Furthermore, restoration is unreasonable, and therefore excused, because the Reymond Plaintiffs were fraudulently induced into executing the Franchise Agreement in the first place.  *See Corbitt v. Harris*, 354 S.E.2d 637, 639 (Ga. Ct. App. 1987) ("'Equity does not require the useless procedure upon the part of the plaintiff to return a part of [the amount at issue] only to have it included in the larger sum due her and which she seeks to recover'" (quoting *Farnell v. Brady*, 125 S.E. 57 (Ga. 1924))), *overruled on different grounds*, *Lau's Corp., Inc. v. Haskins*, 405 S.E.2d 474 (Ga. 1991).

## CONCLUSION

For the reasons set forth herein, Counts I to V state claims upon which relief may be granted, and Defendants' Motion to Dismiss is due to be denied.

Respectfully submitted this 18th day of January, 2011.

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
**ICHTER THOMAS, LLC**
3340 Peachtree Rd., NE, Suite 1530
Atlanta, Georgia 30326-1084
Telephone: 404-869-7600
Facsimile: 404-869-7610
cichter@ichterthomas.com
Attorney for Plaintiffs

## CERTIFICATIONS

I hereby certify, pursuant to LR 7.1(D), NDGa., that **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF** was prepared using size 14 Times New Roman font as required by LR 5.1(C), NDGa.

This 18th day of January, 2011.

/s/ Cary Ichter
Cary Ichter, Esq.
Georgia Bar No. 382515

I hereby certify that a copy of the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF** was served with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Matthew N. Foree, Esq.; matt@foreelaw.com

Charles L. Bachman, Jr., Esq.; chuck.bachman@tbglawgroup.com

This 18th day of January, 2011.

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515